UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*JUDGE SULLIVAN*

Linda Thomas

2311 HAviland Ave    Apt1

Bronx NY 10462

*(In the space above enter the full name(s) of the plaintiff(s).)*

**17 CV 605**

-against-

Teachers College Columbia University

525 West 120 Street

Ny & Ny. 10027

*(In the space above enter the full name(s) of the defendant(s).
If you cannot fit the names of all of the defendants in the space
provided, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of names.
Typically, the company or organization named in your charge
to the Equal Employment Opportunity Commission should be
named as a defendant.  Addresses should not be included here.)*

**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial: ☑ Yes  ☐ No
*(check one)*

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

✓_____  Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).
***NOTE:*** *In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

No_____  Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634.
***NOTE:*** *In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.*

✓_____  Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117.
***NOTE:*** *In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

✓_____  New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic chacteristics, marital status).

✓_____  New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 (actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status).

**I.   Parties in this complaint:**

A.   List your name, address and telephone number. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff        Name   Linda Thomas
                 Street Address   2311 HAviland Ave
                 County, City   ~~Bre~~ Bronx
                 State & Zip Code   NY · 10462
                 Telephone Number   917 502-8366

B.   List all defendants' names and the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant        Name   Teachers College Columbia University
                 Street Address   525 West 120th Street
                 County, City   NY
                 State & Zip Code   NY   10027
                 Telephone Number

C.   The address at which I sought employment or was employed by the defendant(s) is:

                 Employer   Teachers College Columbia University
                 Street Address   525 West 170 4h Street
                 County, City   NYC
                 State & Zip Code   NY   10027
                 Telephone Number

**II.   Statement of Claim:**

State as briefly as possible the facts of your case, including relevant dates and events. Describe how you were discriminated against. If you are pursuing claims under other federal or state statutes, you should include facts to support those claims. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.  The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

_____         Failure to hire me.

_____         Termination of my employment.

_____         Failure to promote me.

_____         Failure to accommodate my disability.

✓                 Unequal terms and conditions of my employment.

_____  ✓    Retaliation.

_____    Other acts *(specify)*: _____ .

> *Note:* Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.

B.    It is my best recollection that the alleged discriminatory acts occurred on: See Attached

   *Date(s)*

C.    I believe that defendant(s) *(check one)*:

   _____  ✓    is still committing these acts against me.

   _____    is not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check only those that apply and explain)*:

   ☒    race   Black / African American          ☐    color _____

   ☒    gender/sex   female          ☐    religion_____

   ☐    national origin _____

   ☐    age.    My date of birth is November 4, 1961 *(Give your date of birth only if you are asserting a claim of age discrimination.)*

   ☒    disability or perceived disability, Medical Conditions Copd.  *(specify)* Diabetes, Sleep Apnea.

E.    The facts of my case are as follow *(attach additional sheets as necessary)*:

Please, ~~attached~~ Reference to Attached Statement
_____
_____
_____
_____
_____
_____

> *Note:* As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.

## III.    Exhaustion of Federal Administrative Remedies:

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: November 29, 2014  Mediation on June 12 2015 *(Date)*.

B.    The Equal Employment Opportunity Commission *(check one)*:

_____    has not issued a Notice of Right to Sue letter.

___✓___    issued a Notice of Right to Sue letter, which I received on *November*  (Date).

> *Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.    Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

_____    60 days or more have elapsed.

_____    less than 60 days have elapsed.

## IV.    Relief:

**WHEREFORE**, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: Seeking back pay & Damages for Pain + Suffering

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 26 day of January, 20 17

Signature of Plaintiff    Linda Thomas

Address    2311 Havi Land Ave
Bronx, NY 10462

Telephone Number    917 502-8366

Fax Number *(if you have one)* _____

**LINDA THOMAS** being duly sworn deposes and says:

1. I, Linda Thomas, residing at 602 West 137th Street, Apt 44, New York, NY 10031, submit this affidavit to amend, clarify and elaborate my charge of discrimination, against Teachers College at Columbia University ("Teachers College" or "TC"), EEOC Charge No. 520-2015-00815, filed on November 29, 2014. On June 12, 2015 a mediation session was held in this matter. The mediation was unsuccessful.

2. I am a 53 year old African American woman of mixed race. During my employment at TC I have suffered the following debilitating physical conditions/diseases: In May, 2007 I was diagnosed with stage II carcinoma of the right breast and a lumpectomy was performed. In 2009, I was diagnosed with Diabetes. On New Year's Eve 2009/2010 I learned the breast cancer returned and a bilateral mastectomy was performed in February 2010 with chemotherapy. My body rejected the implants resulting in further hospitalization and additional reconstruction surgery. I was informed that the particular breast cancer I had is an estrogen fed breast cancer and was advised of the risk of ovarian cancer and consequently had my ovaries removed, also in 2010. On June 21, 2013, I was diagnosed with severe chronic obstructive pulmonary disease ("COPD").

3. I was hired by Teachers' College in July of 2004 as a fire safety director. I have always exceled in my job; I have received perfect scores on my on-site fire safety exams and have helped my co-workers maintain their fire safety certification. I have also received numerous thank you and letters of recognition from students and staff at the Teachers' College.

4. Despite my dedication to Teachers' College and my love of the job, the Public Safety Management Team has always treated me differently and I've been subjected to continuous hostility based on my sex and my disabilities.

1

5. Beginning in 2004 and continuing through 2008, my male co-workers repeatedly made sexually offensive comments in my presence. They referred to women they had dated or were dating as "bitches" and made offensive comments about their sexual relations.

6. Beginning in 2004 until 2008 PSO's Mendez, Cruz, Rosario and Krancher were using the TC video viewer to zoom in and record female students' body parts and then make offensive comments about the women in my presence. I objected to their conduct and complained to my supervisor, Mr. Yeremy Chavez (Mr. Chavez) about this behavior because what is viewed on these specific cameras can be seen on all the cameras consequently forcing female officers to watch this daily. Mr. Chavez was dismissive of my complaints and laughed when I told him adding that he told the "boys" to "cut it out." The sexual harassment and video viewer abuse continued without any discipline. It wasn't until a TC professor, Madonna G. Constantine saw the placement of the camera and wrote a letter to the VP of Security, Mr. James Mitchell was any discipline action taken. TC conducted an internal investigation and determined severity and length of the abuse and the PSO's involved were suspended for two weeks for video viewer abuse.

7. Following my complaints about my co-workers inappropriate behavior, Mr. Chavez began subjecting me to hostility on a daily basis.

8. As previously stated, in 2010 the breast cancer returned and I informed Mr. Chavez of my condition and subsequent need to undergo a bi-lateral mastectomy followed by chemotherapy. I will never forget Mr. Chavez' cold response, 'OK' turning away from me as he picked up his telephone to make a phone call subsequently dismissing me from his office.

9. In 2010, upon returning to work after a chemotherapy treatment, I told Mr. Chavez that I would begin taking a new medication that might make me feel a little woozy and that I would try

2

it first on my day off before taking it at work. Mr. Chavez looked at me with disgust and said, "You're always sick."

**10.** Mr. Chavez was continually hostile towards me throughout my treatment. As a result of the treatment, I lost my hair. On one occasion, when it was particularly hot out, I requested permission to wear a cloth hat instead of my plastic lined officer's hat. Mr. Chavez refused.

**11.** Mr. Chavez also regularly denied me opportunities for career recognition and advancement. Between 2006 and 2013, I was assigned to a fixed post where the presence of a fire safety director was not a requirement. Mr. Chavez also refused to put up letters of recognition and appreciation that I received on a staff appreciation bulletin board or grant me the day off with pay awarded to other officers who did an "outstanding job". In late July, 2015 a female student who reported her friend's distraught suicidal reaction to poor grades. I reported the incident to acting supervisor Tejan and AD Stephan Durkin immediately. Tejan lost the incident reporting student in route to the troubled girl's location. Thankfully, the student called my post at New Residence Hall and informed me (PSO Thomas) what classroom the student was in. I immediately, via radio communication, notified Tejan and Durkin the location of the female student. Chief John Deangelis commended me for doing a great job. However, Mr. So "informed me that I would not get the customary plaque for an "outstanding job" or the notification letter or the day off with pay. I responded "I did not do it for recognition Mr. So".

**12.** Throughout my employment with TC, I was repeatedly denied non-mandatory training, despite the fact that I scored 100% on all annual performance test required for NYS Fire Safety Director licensing, as well as the TC mandatory requirements. TC has repeatedly denied me the opportunity to participate in the annual training classes. Annually, TC offers at least *four additional training* classes including the Planning and Responding to Campus Emergency.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE SULLIVAN

*Linda Thomas*

*2311 HAviland Ave    Apt1*

*Bronx NY 10462*

17 CV. 605

(In the space above enter the full name(s) of the plaintiff(s).)

-against-

*Teachers College Columbia University*

*525 West 120 Street*

*NYC NY. 10027*

(In the space above enter the full name(s) of the defendant(s).
If you cannot fit the names of all of the defendants in the space
provided, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. Typically, the company or organization named in your charge
to the Equal Employment Opportunity Commission should be
named as a defendant.  Addresses should not be included here.)

**COMPLAINT
FOR EMPLOYMENT
DISCRIMINATION**

Jury Trial: ☑ Yes ☐ No
*(check one)*

FILED
U.S. DISTRICT COURT
2017 JAN 26 PM 2: 13
S.D. OF N.Y.

This action is brought for discrimination in employment pursuant to: *(check only those that apply)*

✓ _____ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).
*NOTE: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

No _____ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634.
*NOTE: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.*

✓ _____ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117.
*NOTE: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission.*

✓ _____ New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic chacteristics, marital status).

✓ _____ New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 (actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status).



## I.     Parties in this complaint:

A.     List your name, address and telephone number.  Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff     Name     Linda Thomas

Street Address     2311 HAviland Ave

County, City     ~~PtC~~ Bronx

State & Zip Code     NY  10462

Telephone Number     917 502-8366

B.     List all defendants' names and the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

Defendant     Name     Teachers College Columbia University

Street Address     525 West 120th Street

County, City     NY

State & Zip Code     NY  10027

Telephone Number

C.     The address at which I sought employment or was employed by the defendant(s) is:

Employer     Teachers College Columbia University

Street Address     525 West 170th Street

County, City     NYC

State & Zip Code     NY  10027

Telephone Number

## II.     Statement of Claim:

State as briefly as possible the facts of your case, including relevant dates and events.  Describe how you were discriminated against.  If you are pursuing claims under other federal or state statutes, you should include facts to support those claims.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.   Attach additional sheets of paper as necessary.

A.  The discriminatory conduct of which I complain in this action includes: *(check only those that apply)*

_____          Failure to hire me.

_____          Termination of my employment.

_____          Failure to promote me.

_____          Failure to accommodate my disability.

___✓___          Unequal terms and conditions of my employment.

*Rev. 05/2010*                                        2

_____ Retaliation.

_____ Other acts *(specify):* _____.

*Note:* *Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

B.    It is my best recollection that the alleged discriminatory acts occurred on: *See  Attached*

*Date(s)*

C.    I believe that defendant(s) *(check one)*:

✓         is still committing these acts against me.

_____         is not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check only those that apply and explain)*:

☑   race  *Black/African American*        ☐   color _____

☑   gender/sex   *female*        ☐   religion_____

☐   national origin _____

☐   age.   My date of birth is *November 4, 1961* *(Give your date of birth only if you are asserting a claim of age discrimination.)*

☑   disability or perceived disability, *Medical Conditions COPD.* *(specify)* *Diabetes, Sleep Apnea.*

E.    The facts of my case are as follow *(attach additional sheets as necessary)*:

*Please, ~~attached~~ Reference to Attached Statement*

_____

_____

_____

_____

_____

_____

*Note:* *As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights or the New York City Commission on Human Rights.*

## III.    Exhaustion of Federal Administrative Remedies:

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding defendant's alleged discriminatory conduct on: *November 29, 2014  Mediation on June 12 2015(Date)*.

B.    The Equal Employment Opportunity Commission *(check one)*:

⬚    has not issued a Notice of Right to Sue letter.

✓    issued a Notice of Right to Sue letter, which I received on _November_ *(Date)*.

*Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.*

C.    Only litigants alleging age discrimination must answer this Question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct *(check one)*:

_____    60 days or more have elapsed.

_____    less than 60 days have elapsed.

## IV.    Relief:

**WHEREFORE**, plaintiff prays that the Court grant such relief as may be appropriate, including injunctive orders, damages, and costs, as follows: _Seeking back pay & Damages for pain + suffering_

*(Describe relief sought, including amount of damages, if any, and the basis for such relief.)*

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _26_ day of _January_, 20 _17_

Signature of Plaintiff    _Linda Thomas_

Address    _2311 Haviland Ave_

_Bronx, NY 10462_

_____

Telephone Number    _917 502-8366_

Fax Number *(if you have one)*    _____

**LINDA THOMAS** being duly sworn deposes and says:

1. I, Linda Thomas, residing at 602 West 137th Street, Apt 44, New York, NY 10031, submit this affidavit to amend, clarify and elaborate my charge of discrimination, against Teachers College at Columbia University ("Teachers College" or "TC"), EEOC Charge No. 520-2015-00815, filed on November 29, 2014. On June 12, 2015 a mediation session was held in this matter. The mediation was unsuccessful.

2. I am a 53 year old African American woman of mixed race. During my employment at TC I have suffered the following debilitating physical conditions/diseases: In May, 2007 I was diagnosed with stage II carcinoma of the right breast and a lumpectomy was performed. In 2009, I was diagnosed with Diabetes. On New Year's Eve 2009/2010 I learned the breast cancer returned and a bilateral mastectomy was performed in February 2010 with chemotherapy. My body rejected the implants resulting in further hospitalization and additional reconstruction surgery. I was informed that the particular breast cancer I had is an estrogen fed breast cancer and was advised of the risk of ovarian cancer and consequently had my ovaries removed, also in 2010. On June 21, 2013, I was diagnosed with severe chronic obstructive pulmonary disease ("COPD").

3. I was hired by Teachers' College in July of 2004 as a fire safety director. I have always exceled in my job; I have received perfect scores on my on-site fire safety exams and have helped my co-workers maintain their fire safety certification. I have also received numerous thank you and letters of recognition from students and staff at the Teachers' College.

4. Despite my dedication to Teachers' College and my love of the job, the Public Safety Management Team has always treated me differently and I've been subjected to continuous hostility based on my sex and my disabilities.

5. Beginning in 2004 and continuing through 2008, my male co-workers repeatedly made sexually offensive comments in my presence. They referred to women they had dated or were dating as "bitches" and made offensive comments about their sexual relations.

6. Beginning in 2004 until 2008 PSO's Mendez, Cruz, Rosario and Krancher were using the TC video viewer to zoom in and record female students' body parts and then make offensive comments about the women in my presence. I objected to their conduct and complained to my supervisor, Mr. Yeremy Chavez (Mr. Chavez) about this behavior because what is viewed on these specific cameras can be seen on all the cameras consequently forcing female officers to watch this daily. Mr. Chavez was dismissive of my complaints and laughed when I told him adding that he told the "boys" to "cut it out." The sexual harassment and video viewer abuse continued without any discipline. It wasn't until a TC professor, Madonna G. Constantine saw the placement of the camera and wrote a letter to the VP of Security, Mr. James Mitchell was any discipline action taken. TC conducted an internal investigation and determined severity and length of the abuse and the PSO's involved were suspended for two weeks for video viewer abuse.

7. Following my complaints about my co-workers inappropriate behavior, Mr. Chavez began subjecting me to hostility on a daily basis.

8. As previously stated, in 2010 the breast cancer returned and I informed Mr. Chavez of my condition and subsequent need to undergo a bi-lateral mastectomy followed by chemotherapy. I will never forget Mr. Chavez' cold response, 'OK' turning away from me as he picked up his telephone to make a phone call subsequently dismissing me from his office.

9. In 2010, upon returning to work after a chemotherapy treatment, I told Mr. Chavez that I would begin taking a new medication that might make me feel a little woozy and that I would try

it first on my day off before taking it at work. Mr. Chavez looked at me with disgust and said, "You're always sick."

10. Mr. Chavez was continually hostile towards me throughout my treatment. As a result of the treatment, I lost my hair. On one occasion, when it was particularly hot out, I requested permission to wear a cloth hat instead of my plastic lined officer's hat. Mr. Chavez refused.

11. Mr. Chavez also regularly denied me opportunities for career recognition and advancement. Between 2006 and 2013, I was assigned to a fixed post where the presence of a fire safety director was not a requirement. Mr. Chavez also refused to put up letters of recognition and appreciation that I received on a staff appreciation bulletin board or grant me the day off with pay awarded to other officers who did an "outstanding job". In late July, 2015 a female student who reported her friend's distraught suicidal reaction to poor grades. I reported the incident to acting supervisor Tejan and AD Stephan Durkin immediately. Tejan lost the incident reporting student in route to the troubled girl's location. Thankfully, the student called my post at New Residence Hall and informed me (PSO Thomas) what classroom the student was in. I immediately, via radio communication, notified Tejan and Durkin the location of the female student. Chief John Deangelis commended me for doing a great job. However, Mr. So "informed me that I would not get the customary plaque for an "outstanding job" or the notification letter or the day off with pay. I responded "I did not do it for recognition Mr. So".

12. Throughout my employment with TC, I was repeatedly denied non-mandatory training, despite the fact that I scored 100% on all annual performance test required for NYS Fire Safety Director licensing, as well as the TC mandatory requirements. TC has repeatedly denied me the opportunity to participate in the annual training classes. Annually, TC offers at least *four additional training* classes including the Planning and Responding to Campus Emergency.

When I asked Mr. Chavez why I did not receive the training, he responded -"that management did not want to give you the training and we decide who gets the training".  Most recently, at the end of July/August, 2015 TC scheduled officers for training and I was again excluded.  When I asked to participate in the <u>Planning and Responding to Campus Emergency</u>, training, again I was told no.  The following officers that were allowed to participate in this training for the second time are PSO's Ali, Anderson, Awity, Briel, Cruz, Jaurey, Mayes, Rodriguez-LeGrand, and Tejan.

13. Throughout my employment I have been subjected to unwarranted discipline.  For example, in 2008 and 2009, while undergoing treatment for cancer, I was written up for sick leave abuse and then given a suspension letter.  Human Resources liaison, Patrick Hynes informed Mr. Chavez that he could not suspend me because I had filed a Family Leave Act and instructed Mr. Chavez to "leave Linda alone".  However, to date that suspension remains part of my employment record.

14. On two occasions I was written up for not wearing a full uniform despite the fact that, after numerous requests TC had not provided me with a uniform jacket that fit.

15. On New Year's Eve in 2009 I was written up for wearing a New Year's Eve hat while my co-workers; other officers were not disciplined for wearing unauthorized hats.  In fact, at one point the TC's website contained pictures of other officers wearing unauthorized hats and no action taken by TC.

16. Mr. Chavez's hostility was unrelenting.  In May of 2009, I was exposed to unsafe air caused by the fact that the air return valve in the lobby was turned off while contractors were working in the building.  It was also extremely hot in the building with temperatures over one hundred degrees and my supervisor would not allow me to open the doors and windows.  I

reported to my immediate supervisor that I was not feeling well, had a debilitating headache and felt nauseous and asked permission to leave the building. My supervisor, Mr. Fehy contacted Mr. Chavez and then Mr. Fehy told me that Mr. Chavez said "the only way [Linda] is leaving her post is in an ambulance." I then requested that an ambulance be called and I was transported to the hospital and treated for severe migraine and heat exhaustion.

17. Mr. Chavez also subjected me to excessive work scrutiny. He positioned two security cameras onto the front desk where I was assigned. My co-workers used to call the cameras "Linda Cams" and repeatedly made comments to me that Mr. Chavez was out to get me.

18. In August of 2011, TC hired a new Associate Director ("AD") Hoi Ming So ("Mr. So"), a former Transit Authority police officer. Upon Mr. So's arrival the hostility increased.

19. Shortly after Mr. So joined TC, he made several discriminatory remarks at a training session. He mocked the way African American males walked, spoke and dressed. He also called an African American colleague a "crack head." He also made fun of gay men, again mimicking the way gay men walk and talk. Mr. So, in front of all my colleagues, asked me if I was gay.

20. I was deeply offended by his conduct and complained to Human Resources. In October of 2011, I was finally interviewed regarding my complaint about Mr. So.

21. Three weeks later Mr. So retaliated against me. First, I was forced back to work during a lunch break even though there were two other employees on duty who could have responded. Second, Mr. So wrote me up for making a notation in the logbook that my lunch was interrupted. Third, Mr. So accused me of throwing a book at him and wrote me up. My Shop Steward, Waverly Cannady and I requested to view the security footage from the Bancroft Post because the footage from these cameras would have shown that I had NOT thrown a book. I was told that the cameras were not working and was suspended for five days.

22. My half hour meal break was continually interrupted to respond to non-emergency calls on campus; for example student left her sweater in the classroom or student left her laptop in the library. I was repeatedly ordered to stop my break and respond to these types of situations. If there was no time remaining in the half hour time frame, I was ordered to return to post.

23. After filing numerous complaints with TC and Teamsters Local 707 without any assistance or resolution, in March 2013 I filed a complaint with the New York State Department of Labor:  LCT#1094122 and Case ID# LS012013002056 regarding this violation of Labor Law 126 Meal Breaks.   Shortly after filing my complaint with NYS, I received a letter informing me that TC was notified and informed of their violation and that I should inform NYS DOL immediately if there were any further infractions.

24. Beginning in the fall of 2013 and continuing until the spring of 2014, TC began denying my overtime requests. I complained to my supervisors that I was being denied the opportunity for overtime in favor of male employees who were junior to me.   I complained to management and to my union representative and nothing was done to correct the situation.   Eventually I was provided with a letter from TC acknowledging that I had in fact been skipped for overtime.  On April 7, 2014, Mr. Porter and Mr. So scheduled a discipline action against me meeting to discuss the PSO Ali matter.  My union representative, Waverly Cannady was in attendance.  I took the opportunity to bring to their attention the fact that I had tried to meet with Mr. Porter for almost nine months and nothing was done to address the overtime matter, but now once again TC wants to discipline me for a fabricated incident.   Shortly thereafter, the Public Safety Department issued a finding on the overtime matter and provided an undated and unsigned letter stating that they completed an internal audit and determined that I had in fact been overlooked and the next two overtimes would be mine – two overtimes in lieu of nine months of being overlooked for

overtime in direct violation of overtime and seniority rules. It was at this meeting I learned I would ultimately be suspended for six weeks.

25. In January of 2014, TC hired two part-time Public Safety Officers ("PSO") workers, Zimaro Ali ("PSO Ali") and Angel Mayes ("PSO Mayes"). Both were young African males.

26. I was instructed to provide training to PSO Ali and PSO Mayes and to record their breaks in the logbook. Throughout January PSO Ali, arrived for his shift late and took extended food and coffee breaks. I spoke to PSO Ali numerous times about his lateness and even offered to order his coffee with mine so that he would not have to leave the post.

27. On January 23, 2014, I complained about PSO Ali's behavior to Lead Officer Tejan Ibrahim ("PSO Tejan"). PSO Tejan is also an African male. PSO Tejan ignored all of my complaints.

28. On January 27, 2014, Zacchaeus Jaurey ("PSO Jaurey"), also an African male, told me that PSO Ali was making fun of me by mimicking my facial expressions. PSO Jaurey then said to me, "Listen Linda, you have to learn how to speak to African men. We don't like aggressive women." I advised PSO Jaurey that his statement was offensive.

29. In February of 2014, I complained to Deputy Chief, Michael Porter ("Mr. Porter") about PSO Ali. I informed Mr. Porter that PSO Ali was repeatedly late and was ignoring my work related instructions.

30. That same month, PSO Ali was called into Mr. Porter's office. Shortly after meeting with Mr. Porter, PSO Ali, told PSO Mayes that he had been offered a full time job. Later that month, PSO Mayes laughed and told me, "Maybe I should complain about you. Then I'll get a full time job."

31. On March 10, 2014, PSO Ali wrote up a statement against me. The statement contained untrue allegations. Two days later PSO Tejan also wrote up a statement about me.

32. On March 13, 2014, I was re-assigned to work in a booth underline outside of Zankel Hall. Over the weekend of March 14th and 15th I received called from PSO Tejan, he apologized to me and told me that he was going to get me back into Zankel Hall. At that time I was confused by his phone call because I did not know he too had submitted a complaint against me.

33. The following week I remained in the booth. There I worked with PSO Mayes. PSO Mayes told me that he needed to find full time work because his wife was pregnant and was going to have to leave TC. I suggested that he apply to Mt. Sanai. Thereafter, PSO Mayes got hired by Mt. Sanai and left TC.

34. On March 23, 2014, I told PSO Jaurey to stop looking at Facebook while working. I was concerned that we would both get in trouble for having the page up on the computer in the booth. PSO Jaurey refused to shut the page and so I eventually complained to the supervisor on duty. PSO Jaurey  was then written up for looking at Facebook. Because I reported his Facebook use, PSO Jaurey also made a complaint against me to Mr. So.

35. Early April 2014, PSO Mayes returned to TC in a full time position. The first thing he told me upon his return was, "I hear you've been talking about me. Wait until you see what happens to you."

36. On April 7, 2014, I was informed that I was being suspended because of the complaints made by my coworkers. I immediately complained that I was being targeted by TC supervision and my co-workers and that I had not engaged in the conduct alleged. I contacted my union and demanded that they request the security footage that would show that I had not acted unprofessionally. Once again, TC refused to provide me with the security footage.

37. I was suspended without pay for six weeks, from June 1, 2014 and July 14, 2014. I believe that I was suspended because of my sex, disabilities and in retaliation for past complaints about my co-workers' sexist comments and Mr. So's derogatory comments.

38. I believe that Mr. Chavez and Mr. So coerced PSOs Ali, Mayes, Tejan and Jaurey into making complaints against me to further harass and provoke me in an attempt to ultimately terminate my employment.

39. A co-worker informed me that Mr. So called PSOs Ali, Mayes, Tejan and Jaurey, into the office and each, together and in the presence of Mr. So wrote their complaints/statements against me.

40. I did not engage in the conduct that was alleged. However, in the history of TC there have been numerous instances far more severe than what I was accused of that resulted in lesser discipline or no discipline at all. For example Waverly Cannady (50 year employee at TC) and William Manning (30 years with TC) [retired July 2014] had a fistfight in front of Whittier Hall and there was no discipline. PSO Rodriguez-Legrand's boyfriend, Gilbert Catagena, a Facilities employee (30 years at TC) [retired 2010] slapped her across the face in front of the Thorndyke entrance and again no discipline was imposed. Facilities employee William Cortez called Nancy Rivera a "bitch" at the Shipping Receiving door (this was the second argument that HR was aware of) and he received a one day suspension. The Facilities VP, Suzanne Jablonski, overheard an employee Mark Spratt call her a "real bitch" and he received a one day suspension. As previously stated PSO's Mendez, Cruz, Rosario and Krancher were using the TC video viewer to zoom in and record female body parts from 2004 to 2008 and received a two-week suspension. Further, in the last month, PSO Cruz was found passed out drunk in the men's locker

room. Mr. Chavez sent him home that day but then allowed him to return to work the next. To my knowledge he received no discipline.

41. One month after I returned to work from the six-week suspension Mr. Chavez, Mr. So and lead Tejan started harassing me. On August 19, 2014 Mr. So accused me of eating at my post at New Residence Hall. My union representative, Nancy Rivera was present at the time and stated, "If you are going to write Linda up for eating you have to write up all of the officers." Tejan and Mr. So (following the instructions of Mr. Chavez on Mr. So's cell phone) searched my entire post. They did not find any food. All this took place in full view of passersby, students and faculty causing me a great deal of embarrassment. Mr. So and Tejan then ordered me to the office. While I was not written up, the interaction was hostile causing me a great deal of humiliation, discomfort and distress.

42. Beginning in April 2014 and continuing to present, I have repeatedly requested that TC provide me with the security footage that substantiates the charges filed by PSO Ali, Mayes, Tejan and Jaurey. TC has refused to provide security footage despite the fact that they have repeatedly reviewed security footage (at the same post and camera where the allegations against me were reported) in an effort to determine outcomes when other employees are alleged to have participated in inappropriate conduct. On or about February/March 2015, PSO Mayes accused PSO Gadsden of threatening him and AD Eddy Diamantis listened to each PSO and then reviewed the security footage and confirmed that PSO Gadsden did not threaten PSO Mayes. When PSO Rodriguez-Legrand was accused of being rude to people at her post, Mr. Chavez reviewed the tape and excused her of any wrongdoing. Despite this fact, TC continues to discriminatorily deny me access to video footage that would establish that my suspension was baseless.

43. Based on the above, I believe that TC has discriminated against me on the basis of my sex and disability and in retaliation for my complaints of discrimination in violation of Title VII of the Civil Rights Act of 1964, state and local anti-discrimination laws and labor laws.

44. TC's harassment and discriminatory and retaliatory conduct has caused me financial harm and substantial emotional distress that has exacerbated my physical conditions.

_____
Linda Thomas

Sworn to before me this 2ND
day of October, 2015

_____
Notary Public

RACHEL NICOTRA
Notary Public - State of New York
No. 02NI6186266
Qualified in Kings County
My Commission Expires Aug. 9, 2016

11



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(212) 336-3620
TTY (212) 336-3622

Ms. Linda Thomas
602 West 137th Street Apt. 44
New York, NY 10031

Re:    EEOC Charge No. 520-2015-00815

Dear Ms. Thomas,

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. The procedures apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

We have evaluated your charge based upon the information you submitted, and have determined that further investigation will unlikely result in a determination that Respondent violated one of the federal laws enforced by the Commission. Therefore, your charge will be dismissed.

Attached is your Dismissal and Notice of Rights.  If you want to pursue this matter further in federal court, your lawsuit must be filed within 90 days of your receipt of the Notice.

Please contact Investigator Frank Hernandez at (212) 336-3750 or frank.hernandez@eeoc.gov if you have any questions.

Sincerely.

10/28/2016
Date

Frank C. Hernandez
Federal Investigator
        For
Kevin J. Berry
District Director

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Linda Thomas<br>602 West 137th Street<br>Apt. 44<br>New York, NY 10031 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2015-00815 | Frank C. Hernandez,<br>Investigator | (212) 336-3750 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Kevin J. Berry_     10/28/2016
Kevin J. Berry,
District Director     (Date Mailed)

Enclosures(s)

cc:
Attn
Director of Human Resources
TEACHERS COLLEGE, COLUMBIA UNIVERSITY
525 West 120th Street
New York, NY 10027

Rachel Nicotra, Esq.
LAW OFFICES OF RACHEL NICOTRA
33 West 19th Street
4th Fl.
New York, NY 10011

EEOC Form 5 (1/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA<br>[X] EEOC | |

| New York State Division of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Linda Thomas | (917) 502-8366 | 11/04/1961 |

| Street Address | City, State and ZIP Code |
|---|---|
| 602 West 137th Street, Apt-44 | New York, NY 10031 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Teachers College, Columbia University | | |

| Street Address | City, State and ZIP Code |
|---|---|
| 525 West 120th Street | New York, NY 10027 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [X] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **2012**  Latest: **Present**
[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**Statement of Harm:** I am currently being discriminated and retaliated against due to my sex (female) and disability. Regarding the sex discrimination, I am one of two female employees in my department. I have been told that "men don't like aggressive women." The word "bitch" is consistently used in conversation by my supervisor. I was provided a uniform jacket that was far too small and was told a bigger one could not be obtained. I have been disciplined for smoking while men smoke in the same area with no disciplinary action taken. Regarding my disability, my employer is aware of my medical issues, and I have applied for FMLA. Nevertheless, I have received 30 write-ups and a suspension for absences deriving from medical issues. My supervisor comments that "I'm always sick." My employer refuses to give me enough time to eat on my break, despite knowing how important it is. When I let my supervisor know that I could not constantly do work during my lunch break because I needed to eat, I was written up. I am being singled out, specifically targeted, retaliated against, and treated differently due my sex and disability.

**Statement of Discrimination:** I believe I have been discriminated against because of my sex (female) and disability in violation of Title VII of the Civil Rights Act of 1964 (Title VII), the Family and Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA), as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>*Linda Thomas*<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| 11/29/14       *Linda Thomas*<br>Date        Charging Party Signature | |